Robert AUSTIN et al.,

v.

**GOVERNOR OF the STATE of
Maine et al.**

Supreme Judicial Court of Maine.

Argued Jan. 23, 1985.

Decided, April 26, 1985.

Shawn C. Keenan (orally), John J. Finn, Maine State Employees Association, Augusta, for plaintiff.

Cabanne Howard (orally), Asst. Atty. Gen., Augusta, for defendant.

Before McKUSICK, C.J., and ROBERTS, VIOLETTE, WATHEN, GLASSMAN, and SCOLNIK, JJ.

GLASSMAN, Justice.

The plaintiffs, twenty-five employees of the State Liquor Commission's Hallowell warehouse, the Maine State Employees Association, and five State legislators from Kennebec County,[1] filed a complaint seek-

---

1. In the Superior Court, the defendants did not move for a dismissal as to any of the plaintiffs, pursuant to M.R.Civ.P. 12(b)(6). We express no opinion as to whether all of the plaintiffs named

ing to enjoin the defendants from closing the Hallowell warehouse and State Store No. 3 located in that warehouse. The plaintiffs further sought a declaratory judgment, pursuant to 14 M.R.S.A. § 5951 *et seq.*, that the State Liquor Commission (Commission), by closing the warehouse and store and by converting to bailment warehousing, violated various provisions of Title 28, that generally controls the importation, warehousing, and sale of liquor within the State. The matter was submitted to the Superior Court, Kennebec County, on stipulated facts and affidavits. After hearing, the Superior Court denied the requested injunction and entered a judgment for the defendants, holding there had been no violations of 28 M.R.S.A. §§ 151, 153, and 604, and finding no merit in the plaintiffs' allegations of other statutory violations under that title. On appeal, the plaintiffs do not press the Superior Court's denial of injunctive relief, but challenge the judgment for the defendants. Finding no error, we affirm the judgment.

## I.

Because this appeal turns on whether the actions of the Commission in closing the liquor warehouse and store in Hallowell and converting to bailment warehousing are prohibited by the statutory scheme regulating alcohol, we think it appropriate to review briefly the history of those statutes relevant to this case.

The repeal of the Eighteenth Amendment to the U.S. Constitution in 1933 prompted our Legislature to establish the statutory structure for the regulation of the control and sale of liquor, ending eighty-three years of Prohibition in Maine. P.L.1933, ch. 300. Maine's Legislature has prohibited the retail sale of liquor except through a state-owned store, 28 M.R.S.A. § 151 (1974), through a state agency store, 28 M.R.S.A. § 153 (Supp.1984), or pursuant to a license granted by the Commission, 28 M.R.S.A. ch. 9 (1974 and Supp.1984). The possession of liquor or spirits with the in-

tent to sell in violation of law has long been prohibited. 28 M.R.S.A. § 1051 (1974). Furthermore, with exceptions not pertinent to the issues here, the law proscribes importations of liquor or spirits into the state by anyone other than the Commission. 28 M.R.S.A. § 1052 (1974 and Supp.1984).

Prior to 1953, the State, pursuant to section 151, leased privately-owned buildings, first in Portland and then in Augusta, in which a central warehouse was operated for the purpose, *inter alia,* of storing spirits purchased by the State for distribution to retail liquor stores in Maine. State employees performed the warehousing functions at these facilities. Subsequent to the enactment of the 1953 amendment to section 151, providing that "[t]he State warehouse and wholesale stores shall be located in places designated by the commission," the State in 1955 constructed and commenced operation of a warehouse in Hallowell. All spirits purchased by the State and imported into Maine were brought to this warehouse, and deliveries to retail liquor stores were made from that facility. Beginning in 1973, the Commission also maintained a wholesale store, State Store No. 3, at the Hallowell facility. The wholesale functions of Store No. 3 included the sale of spirits to state agency stores and the consolidation of less-than-caseload lots for sale to state stores.

Following the enactment of amendments to section 604 in 1982, the Commission issued certificates of approval for special warehouse storage facilities to Fore River Warehousing and Storage Company, Inc., at Portland and York Bottling Company, Inc., at Biddeford. All spirits brought into Maine by importers and stored in the Fore River warehouse were subsequently purchased by the State, transported to the Hallowell warehouse, and distributed to state stores or state agency stores. By early 1984, approximately 38% of all spirits sold in Maine were passing through the Fore River warehouse.

in this action stated "a claim upon which relief    can be granted."

On April 5, 1984, the Governor's Management Task Force, charged with advising the Governor as to the State's most efficient discharge of its liquor regulatory responsibilities, recommended that the Commission cease the Hallowell warehouse operation and convert to bailment warehousing. Following this recommendation, the Commission notified all manufacturers and wholesalers doing business with the State that the Hallowell warehouse would not receive inbound merchandise after June 15, 1984, and that its operation would cease after June 30, 1984.

## II.

■ We turn first to the plaintiffs' contention that section 151 requires the Commission to own and operate a liquor warehouse in the vicinity of Augusta. We do not agree. Section 151, in pertinent part, provides that "[t]he commission is authorized to lease ... warehouses ..." and "the state warehouses ... shall be located in places designated by the commission ...." 28 M.R.S.A. § 151 (1974). (P.L.1959 ch. 274 § 7 made "warehouse" plural.) We fail to see how these words mandate the continuing operation of the Hallowell warehouse. Indeed, on its face, the statute does not expressly require the Commission to own or maintain a warehouse. Section 151 merely authorizes the Commission to operate a warehouse at a location designated by the Commission. Moreover, nothing in section 151 prevents the Commission from choosing to close any such warehouse.

## III.

Next, we address the plaintiffs' allegation that, under the terms of section 153, Store No. 3 at Hallowell was illegally closed. Section 153 provides, in part, that "[t]he commission shall not close any state store unless, no fewer than 60 days before the effective date of the closing, it notifies the Joint Standing Committee on Legal Affairs ...." 28 M.R.S.A. § 153 (Supp.1984). The plaintiffs contend that the closing of the Hallowell warehouse and its Store No. 3 was in violation of this statute, as it was accomplished without timely notification to the Joint Standing Committee.

■ Again, the plaintiffs misread the plain words of the statute. Section 153 controls retail stores. In the instant case, both parties stipulated that "[t]here is no retail outlet" at the liquor warehouse in Hallowell. Section 153 pertains solely to retail stores and does not apply to the operation or closing of a wholesale store such as the Hallowell Store No. 3.

## IV.

■ Finally, we consider the plaintiffs' contention that section 604 proscribes the Commission's decision to convert to bailment warehousing. The defendants agree that prior to the enactment in 1981 of amendments to section 604, liquors, wines, or spirits could be imported into and stored only at state-operated warehouses. The 1981 amendments, however, provided in pertinent part:

Notwithstanding the importation restrictions of Sections 1051 and 1052, the commission may issue certificates of approval authorizing the direct importation of ... spirits from suppliers ... into special warehouse storage facilities located within this State that are under the direct supervision and control of the certificate holder.

. . . .

Spirits may be withdrawn from special warehouse storage facilities by the State Liquor Commission.

28 M.R.S.A. § 604, ¶¶ 4, 7 (Supp.1984). Following the enactment of these amendments, the Commission issued certificates of approval for special warehouse storage facilities to the owners of Fore River and York Bottling, thus enabling them to import and store liquors, wines, or spirits. The success of these installations made it no longer practical for the Commission to maintain its Hallowell warehouse. The amendments to section 604 expressly provide for the importation of liquor into pri-

vately-owned "special warehouse storage facilities," as long as those supervising and controlling the facilities possess the Commission's "certificate of approval." *See* 28 M.R.S.A. ch. 16 (Supp.1984). This language precisely describes the current operation of the Fore River and York Bottling warehouses and, thus, authorizes the Commission's decision to convert to bailment warehousing.

After carefully reviewing this record, we hold the plaintiffs' remaining allegations of statutory violations of Title 28 are without merit.

The entry is:

Judgment affirmed.

All concurring.